### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| KRIS RICHARD, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.: 22-5468 |
| GENUINE CABLE GROUP, LLC | ) ) ) ) | |
| Defendant. | ) | Jury Trial Demanded |

## COMPLAINT

Plaintiff, Kris Richard, by her attorneys, the Garfinkel Group, LLC, complains against Defendant Genuine Cable Group, LLC for violations of the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174/1, *et seq.* ("IWA") and Oregon Whistleblower Act, O.R.S. § 659A.199 ("OWA") and in support thereof, states:

## PARTIES

1. At all times relevant herein, Kris Richard ("Richard" and/or "Plaintiff") resided in and was domiciled in the state of Oregon.

2. On or about July 12, 2022, Richard was diagnosed with acute myeloid leukemia ("AML").

3. As of the date of this filing, Richard is hospitalized, suffers from, and is undergoing treatment for AML. According to medical studies, the median survival time for AML is 8.5 months[1] with a 2- and 5-year mortality rates ranging from 32-24%.

---

[1] Shallis RM, Wang R, Davidoff A, Ma X, Zeidan AM. Epidemiology of acute myeloid leukemia: recent progress and enduring challenges. Blood Rev. 2019; 36:70–87.

4. Genuine Cable Group, LLC ("Genuine" and/or "Defendant") is a for-profit Delaware limited liability company that maintains in principal place of business in Chicago, Illinois, in Cook County, within this judicial district.

5. Defendant is a distributor of wire, cable, and related products.

6. At all relevant times herein, Richard was an "employee" of Defendant, as that term is defined by the IWA and OWA. 740 ILCS 174/5; § 659A.001(3).

7. At all relevant times herein, Defendant was Richard's "employer," as that term is defined by the IWA and OWA. 740 ILCS 174/5; § 659A.001(4)(a).

## JURISDICTION AND VENUE

8. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1), to wit diversity, as it involves citizens of different states, and the amount in controversy exceeds $75,000.00.

9. Venue is appropriate in this district pursuant to 28 U.S.C. §1391(b)(1), (2) (venue generally).

## FACTS

10. On March 16, 2021, Richard was hired by Defendant as the corporate Quality, Safety and Compliance Manager, with enterprise-wide responsibilities for these functions.

11. Richard began working for Defendant on March 29, 2021.

12. Richard performed well in her job and received several commendations on her performance.

13. In this role, Richard's primarily responsibility was ensuring Defendant complied with various state and federal safety laws, rules, and regulations.

14. A key element of Richard's job responsibilities was working with and overseeing external audits performed by third parties as to Defendant's safety and other compliance practices, as

2

well as ensuring that any corrective actions identified were addressed in order to bring the organization into compliance.

15. Between April 2021 and January 2022, Richard observed a host of safety issues and material deficiencies with Defendant's willingness to address these issues.

16. Richard understood Defendant's deficiencies to be violations of federal and state laws, rules and regulations, including but not limited to violations of the Occupational Safety and Health Act of 1970 ("OSH Act").

17. Accordingly, she escalated her concerns over the violations identified, by sending numerous emails to her supervisors, including but not limited to: Quality Assurance Manager, Thomas Roach ("Roach"), Chief Operating Officer, Tom Harper ("Harper"), Vice President of Human Resources John Paradis ("Paradis"), and Quality Manager, Brian Bush ("Bush").

18. Specifically, Richard's complaints were intended to inform Defendant of several safety issues and/or violations including but not limited to, deficient safety and training protocols, failure to complete mandatory documentation, the failure to complete and submit safety corrective actions arising out of site audits, and failure to provide employees compliant personal protective equipment ("PPE").

19. After being explicitly notified of the violations alleged in ¶18, Defendant failed to take action to correct the violations identified.

20. On or about January 5, 2022, and based on the lack of remediation taken by Defendant in response to certain notifications of the violations, Richard filed complaints with the Michigan Occupational Safety and Health Administration ("MIOSHA"). Specifically, the January 5, 2022, MIOSHA complaint addressed certain violations pertaining to failure to: (i) properly report workplace injuries, (ii) adhere to PPP requirements, (iii) complete requisite Occupational Health and Safety

Administration ("OSHA") training; and (iv) remediate safety issues resulting from a fire at Defendant's Rochester Hills, Michigan, manufacturing facility.

21. On or about February 3, 2022, Richard filed a subsequent complaint pursuant Section 11(c) of OSH alleging retaliation by Defendant for engaging in protected activity, to wit, raising health, welfare and safety violations with her employer, including filing a complaint with MIOSHA.

22. Between February 3, 2022, and April 11, 2022, Richard continued to complain to management regarding Defendant's ongoing failure to comply with the safety violations.

23. Subsequent to raising her concerns to management and MIOSHA regarding Defendant's safety violations, Richard's working conditions became hostile and Defendant's attitude towards her shifted.

24. On or about April 11, 2022, and subsequent to her protected activity, Harper, in Richard's year-end review stated that "she [Richard] struggled to create a culture of inclusion and listening and failed to listen **to all perspectives** on safety efforts." (Emphasis added). Harper also explained that Richard "struggled to win the hearts and minds of our employees related to safety and **that her [Richard's] combative approach has made her ineffective at leading safety**." (Emphasis added).

25. On or about May 4, 2022, and subsequent to her protected activity of informing a governmental agency of Defendant's illegal activities, Defendant demoted and stripped Richard of her primary job responsibility, to wit, safety oversight.

26. Knowing that they had violated numerous laws including the Counts alleged herein, Defendant felt "compelled" to inform Richard that the stripping of most if not all of her job duties was not a "demotion."

4

27. Defendant's retaliatory activities have severely limited Richard's ability to obtain future promotions, increase in wages and have limited her ability to secure comparable employment with any subsequent employer.

## COUNT I
## AGAINST GENUINE
## IWA - RETALIATION

28. Paragraphs 1- 27 are incorporated by reference herein.

29. Plaintiff brings Count I against Defendant for violations of the IWA for retaliating against Plaintiff by making baseless allegations with respect to her ability to handle safety matters, demoting her and stripping her of safety responsibilities for raising concerns about Defendant's failure to follow the certain safety protocols, in violation of both federal and state law and filing a formal complaint with a state agency.

30. The IWA prohibits an employer from retaliating against an employee who discloses information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule or regulation. 740 ILCS 174/15.

31. Plaintiff filed a formal complaint with a state enforcement agency, MIOSHA, related to Defendant's failure to address certain safety violations which she believed to be a violation of numerous federal and state laws.

32. Defendant retaliated against Plaintiff by demoting and removing her safety responsibilities, in violation of the IWA, based on Plaintiff's complaint filed with MIOSHA regarding Defendant's failure to adhere to certain mandated safety protocols in violation of federal and state law.

33. Defendant violated the IWA by making baseless allegations against Plaintiff related to safety in her 2021 end year review, demoting her and stripping her of all safety responsibilities.

34. Defendant's violation of the IWA was willful.

35. As a direct result of Defendant's violation of the IWA, Plaintiff has suffered loss of income, benefits, career opportunities, as well as humiliation and emotional distress.

## COUNT II
## AGAINST GENUINE
## OWA - RETALIATION

36. Paragraphs 1-27 are incorporated by reference herein.

37. Plaintiff brings Count II against Defendant for violations of the OWA for retaliating against Plaintiff by making baseless allegations with respect to her ability to handle safety matters, demoting her and stripping her of safety responsibilities for raising concerns about Defendant's failure to follow the certain safety protocols, in violation of both federal and state law and filing a formal complaint with a state agency.

38. The OWA states, in relevant part:

> It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation, or other terms, conditions, or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule, or regulation.

ORS § 659A.199.

39. Plaintiff lodged complaints with her direct supervisors, on several occasions, related to Defendant's failure to address certain safety violations which she believed to be a violation of numerous federal and state laws, and filed a formal complaint with a state agency.

40. Defendant retaliated against Plaintiff by demoting and removing her safety responsibilities in violation of the OWA, based on Plaintiff's complaints regarding Defendant's failure to adhere to certain safety protocols in violation of federal and state law, including filing a complaint with a state enforcement agency, MIOSHA.

41. Defendant violated the OWA by making baseless allegations against Plaintiff related to safety in her 2021 end year review, demoting her and stripping her of all safety responsibilities.

42. Defendant's violation of the OWA was willful.

43. As a direct result of Defendant's violation of the OWA, Plaintiff has suffered loss of income, benefits, career opportunities, as well as humiliation and emotional distress.

WHEREFORE, Kris Richard, respectfully requests that this Court enter judgment in her favor against Defendant Genuine Cable Group, LLC, as follows:

A. Lost wages in the form of back pay, with statutory interest penalties pursuant to 740 ILCS 174/30;

B. Damages for emotional distress and humiliation;

C. Compensatory damages;

D. Punitive damages;

E. Reasonable attorneys' fees and costs incurred in filing this action; and

F. Such other and further relief as the Court deems appropriate and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all claims.

Dated: October 5, 2022

Respectfully submitted,

*/s/Haskell S. Garfinkel*
One of Plaintiff's Attorneys

The Garfinkel Group, LLC
6252 N. Lincoln Avenue, Suite 200
Chicago, IL. 60659
Max Barack (IARDC No. 6312302)
max@garfinkelgroup.com
Haskell Garfinkel (IARDC No. 6274971)
haskell@garfinkelgroup.com
Matthew Fletcher (IARDC No. 6305931)
matthew@garfinkelgroup.com
Andrew Fullett (IARDC No. 6328490)
andrew@garfinkelgroup.com